# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# JASPER DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, ) ) ) | |
| Plaintiff, ) ) ) | |
| v. ) ) | CIVIL ACTION NO. _____ |
| SARAFINA NETWORK, LLC, ) ) ) | JURY TRIAL DEMAND |
| Defendant. ) | |

## COMPLAINT

### NATURE OF THE ACTION

This is an action under Title I and Title V of the Americans with Disabilities Act of 1990, as amended ("ADA") and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of disability and to provide appropriate relief to Charging Party Justin Overton ("Charging Party") who was adversely affected by such practices. As alleged with greater particularity below, Plaintiff Equal Employment Opportunity Commission ("Commission") alleges that Defendant Sarafina Network, LLC ("Defendant") violated the ADA by subjecting Charging Party to a hostile work environment on the basis of his disabilities, terminating Charging Party on the basis of his disabilities, and retaliating against Charging Party because of his protected activity.

### JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Section 107(a) of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12117(a), which incorporates by

1

reference Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-5(f)(1) and (3) and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed in Winston County, Alabama, which is within the jurisdiction of the United States District Court for the Northern District of Alabama, Jasper Division.

## PARTIES

3. The Commission is the agency of the United States Government charged with the administration, interpretation, and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4. At all relevant times, Defendant, an Alabama limited liability company, has continuously been doing business in the State of Alabama in the City of Double Springs and has continuously had at least 15 employees.

5. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Sections 101(5) and 101(7) of the ADA, 42 U.S.C. §§ 12111(5), (7).

6. At all relevant times, Defendant has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## ADMINISTRATIVE PROCEDURES

7. More than thirty days prior to the institution of this lawsuit, Charging Party filed a charge with the Commission alleging violations of the ADA by Defendant.

8. On June 26, 2024, the Commission issued Defendant a Letter of Determination

finding reasonable cause to believe that the ADA was violated and inviting Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

9. On September 5, 2024, the Commission issued to Defendant a Notice of Failure of Conciliation advising Defendant that the Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

10. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

## COUNT I – DISPARATE TREATMENT

11. Charging Party is a qualified individual with multiple disabilities and Defendant regarded Charging Party as having a disability under Sections 3 and 101(8) of the ADA, 42 U.S.C. §§ 12102 and 12111(8).

12. Charging Party has impairments which include autism spectrum disorder ("ASD") or a similar atypical neurological processing disorder, which substantially limits neurological function, anxiety disorder, which substantially limits neurological function, a vision disorder that causes, among other symptoms, his eyes to "wander" and substantially limits vision, and a seizure disorder which manifests as periods of vacant staring, and which substantially limits neurological function.

13. From November 2021, through June 2022, Charging Party successfully performed the essential functions of his job as a cashier at Defendant's Double Springs, Alabama convenience store.

14. When a management position became available at Defendant's Haleyville, Alabama location, Charging Party told the Store Manager he wanted to apply for the open position.

15. The Store Manager told Charging Party he was "too disabled to qualify" and refused to submit him for consideration for a management role at the Haleyville location.

16. Managers, coworkers, and customers called Charging Party "blind," "special," "crazy eyes," "shaky eyes," and "blind, retarded SOB" daily due to his disabilities.

17. On or about June 8, 2022, the Charging Party suffered a "vacant stare" seizure while at work.

18. When Charging Party returned to work on or about June 10, 2022, the Store Manager tried to transfer Charging Party to a less visible job working in the deli or stocking shelves.

19. When Charging Party declined to transfer, the Store Manager told him he could not work without a doctor's note releasing him back to work.

20. Charging Party continued to work his scheduled hours through June 12, 2022.

21. Charging Party obtained a work release on or about June 13, 2022, and attempted to give it to the Store Manager, his direct supervisor, and another manager working for Defendant, but they refused to accept it.

22. The Store Manager told Charging Party he must give the note to the District Manager.

23. However, the Store Manager refuse to provide the District Manager's contact information to the Charging Party.

24. On or about June 20, 2022, Charging Party asked Store Manager if he had been fired.

25. The Store Manager stated she had not fired Charging Party.

26.  The Store Manager told Charging Party that District Manager was at a funeral and would call Charging Party later about the work release.

27.  On June 21, 2022, Charging Party sent the Store Manager a text stating that he had not heard from the District Manager, but the Store Manager refused to provide District Manager's contact information.

28.  Later that day, Charging Party sent the Store Manager a text stating he did not quit and that the Store Manager did not fire him, but the Store Manager would not let him return to work. The Store Manager responded that Charging Party did not show up for work, so she removed him from the work schedule.

29.  Charging Party finally obtained the information to submit his work release to the District Manager in the middle of August 2022.

30.  Defendant refused to return him to the work schedule after receiving the work release.

31.  The District Manager stated Charging Party's disabilities were too much of an issue and that the Charging Party had been terminated.

32.  The effect of the practices complained of in this Count has been to deprive Charging Party of equal employment opportunities and otherwise adversely affect his status as an employee because of his disabilities.

33.  The unlawful employment practices described in this Count were intentional and in reckless disregard of Charging Party's federally protected civil rights.

### COUNT II – HOSTILE WORK ENVIRONMENT

34.  Defendant subjected Charging Party to a hostile work environment on the basis of his disabilities.

35. The Store Manager, Charging Party's direct supervisor, and other store employees and managers often called Charging Party "blind," "shaky eyes," "crazy eyes," or "blind, retarded SOB" due to Charging Party's vision related disabilities.

36. The Store Manager, coworkers and customers often called Charging Party "stupid" or "retarded" due to his ASD or anxiety disorder.

37. The Store Manager told Charging Party he was "too disabled to qualify" for an open management position at the Haleyville, Alabama location and refused to submit him for consideration for the management role.

38. When other individuals with disabilities applied for work at the Double Springs, Alabama store, the Store Manager threw away the applications and told Charging Party that Defendant did not need any more disabled people around.

39. Managers, coworkers and customers called Charging Party "blind," "special," "crazy eyes," "shaky eyes," "stupid," and "blind, retarded SOB" daily due to his disabilities.

40. The Store Manager and other coworkers often snuck up on Charging Party to make loud noises, would make tapping noises next to him or would ask question after question to trigger Charging Party's anxiety or ASD symptoms.

41. The Store Manager encouraged coworkers and customers to mock and make fun of Charging Party on the basis of his disabilities.

42. After Charging Party rode home from work in an ambulance following a seizure, Store Manager complained to other employees and to customers that "the blind, retarded SOB shouldn't get special treatment."

43. Charging Party regularly asked the Store Manager to stop harassing him on the basis of his disabilities.

6

44. Charging Party regularly asked the Store Manager to stop coworkers and customers from harassing him on the basis of his disabilities.

45. At all times, the Store Manager refused to stop harassing or stop others from harassing Charging Party.

46. Charging Party suffered from an increase in seizure activity while employed at Defendant. Stress is a seizure trigger for Charging Party.

47. Defendant has no anti-discrimination or anti-harassment policy, program or training.

48. The effect of the practices complained of in this Count has been to deprive Charging Party of equal employment opportunities and otherwise adversely affect his status as an employee because of his disabilities.

49. The unlawful employment practices complained of in this Count were intentional and in reckless disregard of Charging Party's federally protected civil rights.

## COUNT III – RETALIATION

50. Charging Party's atypical neuroprocessing and anxiety disorder related behaviors, often angered the Store Manager, which led to more harassment, often in front of coworkers and/or customers.

51. In or around the week of June 10, 2022, when the Store Manager refused to stop harassing Charging Party and stop others from harassing Charging Party due to his disabilities, Charging Party told the Store Manager he planned to file a complaint with the EEOC if she did not stop the harassment.

52. The Store Manager refused to stop harassing Charging Party or intervene when others harassed him.

53. After an intense period of harassment, on or about June 10, 2022, Charging Party told Store Manager he had called the EEOC to schedule an appointment.

54. The Store Manager responded by refusing to schedule Charging Party to work until he brought in a doctor's note releasing him to work.

55. Charging Party finished working his scheduled days through June 12, 2022, without a work release.

56. The following work week, a manager informed Charging Party that he had not been scheduled to work and refused to accept Charging Party's work release.

57. The Store Manager, Charging Party's direct supervisor, also refused to accept Charging Party's work release, telling Charging Party he had to give the paperwork to the District Manager, but then refused to provide District Manager's contact information.

58. The Store Manager never returned Charging Party to the work schedule.

59. On June 20, 2022, Store Manager told Charging Party that he had not been fired.

60. The Store Manager stated the District Manager was at a funeral but would call Charging Party later to accept Charging Party's work release.

61. On June 21, 2022, Charging Party sent the Store Manager a text stating that he had not heard from District Manager, but Store Manager refused to provide District Manager's contact information.

62. Later that day, Charging Party sent the Store Manager a text stating he did not quit and that the Store Manager did not fire him, but the Store Manager would not let him return to work.

63. The Store Manager responded that Charging Party did not show up for work, so she removed him from the work schedule.

64. Charging Party explained that when he arrived at the store, the manager on duty told him he had not been scheduled to work.

65. Charging Party finally submitted his work release to the District Manager in the middle of August 2022. However, Defendant refused to return him to the work schedule.

66. The District Manager stated Defendant terminated Charging Party.

67. After removing Charging Party from the work schedule, the Store Manager repeatedly told members of the small town of Double Springs that Charging Party was "sue-happy," "stupid," "blind," "rude," and "retarded."

68. As a result of the Store Manager's statements, Charging Party had difficulties finding new employment after his termination by Defendant.

69. The effect of the practices complained of in this Count has been to deprive Charging Party of equal employment opportunities and otherwise adversely affect his status as an employee because of his opposition to discrimination and participation in an EEOC investigation.

70. The unlawful employment practices complained of in this Count were intentional and in reckless disregard of Charging Party's federally protected civil rights.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from subjecting employees to a hostile work environment on the basis of disability.

B. Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from taking adverse employment actions against employees or applicants on the basis of disability.

C. Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from taking adverse employment actions against employees or applicants because of their engagement in activities protected by the ADA.

D. Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with disabilities, and which eradicate the effects of its past and present unlawful employment practices.

E. Order Defendant to make Charging Party whole, by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to reinstatement or frontpay in lieu thereof.

F. Order Defendant to make Charging Party whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in paragraphs 11-70 above, including medical expenses and job search expenses, if any, resulting from Defendant's unlawful employment practices in amounts to be determined at trial.

G. Order Defendant to make Charging Party whole by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of, including, but not limited to, emotional pain and suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

H. Order Defendant to pay punitive damages for its malicious and reckless conduct, in amounts to be determined at trial.

I. Grant such further relief as the Court deems necessary and proper in the public interest.

J.   Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.

                              Respectfully submitted,
                              KARLA GILBRIDE
                              General Counsel

                              EQUAL EMPLOYMENT OPPORTUNITY
                              COMMISSION
                              131 M Street, NE
                              Washington, DC 20507

                              */s/ Marsha Lynn Rucker*
                              Marsha Lynn Rucker (PA 90041)
                              Regional Attorney
                              Tel.: (205) 651-7045
                              marsha.rucker@eeoc.gov

                              EQUAL EMPLOYMENT OPPORTUNITY
                              COMMISSION
                              Birmingham District Office
                              Ridge Park Place, Suite 2000
                              1130 22nd Street South
                              Birmingham, Alabama 35205